**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| RANDALL MORRIS,<br>Plaintiff,<br><br>v.<br><br>JPATS, et al.,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 2:25-cv-02247-SHL-cgc |

**ORDER GRANTING MOTION FOR LEAVE TO AMEND, DIRECTING CLERK TO FILE THE AMENDED COMPLAINT, CONSOLIDATING COMPLAINT, DISMISSING CONSOLIDATED COMPLAINT WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART, AND GRANTING LEAVE TO AMEND THE CLAIMS DISMISSED WITHOUT PREJUDICE**

On March 4, 2025, Plaintiff Randall Morris, an inmate at the Federal Correctional Institution in Seagoville, Texas ("FCI Seagoville"), Bureau of Prisons ("BOP") register number 15141-010, filed a pro se Complaint alleging claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2674, et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201. (ECF No. 2.) He subsequently filed a motion for leave to amend (ECF No. 12) and a proposed amended complaint (ECF No. 12-1).

Because Morris may amend once as a matter of course, Fed. R. Civ. P. 15(a)(1), his motion to amend (ECF No. 12) is **GRANTED**, and the Clerk **SHALL** docket the Amended Complaint (ECF No. 12-1).

The Court **CONSOLIDATES** the Complaint and Amended Complaint for screening under the Prison Litigation Reform Act (the "PLRA"), 28 U.S.C. §§ 1915 et seq. For the reasons

set forth below, the Consolidated Complaint is **DISMISSED WITH PREJUDICE** in part and **DISMISSED WITHOUT PREJUDICE** in part, and the Court **GRANTS** Morris leave to amend the claims dismissed without prejudice.

## BACKGROUND

Morris alleges that, in December 2022 or January 2023, he was housed at the Dallas County Detention Center in Fordyce, Arkansas, awaiting transfer to the BOP. (ECF No. 2 at PageID 3.) He wrote to the United States Marshals Service (the "USMS") in Fort Smith, Arkansas to express that he was "concern[ed] that [he] would be divorced from [his] legal documents upon transfer." (Id.) The USMS forwarded the letter to its Little Rock, Arkansas office, which "sent an email to a Lieutenant at the Dallas County Detention [C]enter confirming that [Morris] be allowed to take [his] legal documents upon transfer from that jail to the BOP." (Id.) He put a copy of that email in several mesh bags containing other items of his property. (Id.)

On February 22, 2023, Morris was transferred to a CoreCivic-operated facility in Tallahatchie County, Mississippi, and was permitted to take his legal documents with him. (Id.) Morris contacted the USMS in Fort Smith and the United States District Court in Texarkana, Arkansas to "express [his] continued concern regarding the possible loss of [his] legal documents due to the resistance that [he] had experienced during [his] transit" between facilities. (Id.)

The next day, Morris was transported to the Memphis airport. (Id. at PageID 4.) An employee of the Justice Prisoner Air Transportation System ("JPATS") allegedly took his legal documents and told Morris that JPATS was not required to allow him to travel with his legal documents. (Id.) After some back and forth, the employee informed Morris that the documents would be forwarded to his destination. (Id.) Morris contends that other inmates' legal

documents were confiscated and placed in a compartment accessible only to JPATS employees. (Id.)

When Morris arrived at FCI Seagoville, he tried to recover his documents. (Id.) He talked to a case manager named Ms. Kennedy at the prison about his missing legal documents, who stated she would investigate the matter. (Id.) Morris then requested help in a letter addressed to the USMS headquarters in Arlington, Virginia. (Id.) A few days later, he followed up with Ms. Kennedy, who had not located the documents. (Id.) Morris also sent letters to the USMS in Fort Smith, Arkansas, and CoreCivic in Nashville, Tennessee. (Id. at PageID 5.)

Morris filed an administrative tort claim with the USMS. (Id.) The USMS denied the claim because the Federal Tort Claims Act ("FTCA") does not waive sovereign immunity for detention-of-property claims. (ECF No. 2-1 at PageID 26–27.) Moreover, the denial explained that any potential mishandling of Morris's property was committed by an independent contractor, and the United States is not liable under the FTCA for the acts or omissions of independent contractors. (Id.)

Following the USMS denial, Morris submitted his tort claim to JPATS. (Id. at PageID 28.) In his Complaint, Morris alleges that he had not received a response from JPATS as of February 16, 2025. (ECF No. 2 at PageID 5.)

Morris asserts the following claims for relief: (1) FTCA claims against the USMS and JPATS for the loss of his legal materials; (2) APA claims "arising from the administration and operation of the federal prisoner transport system" and the loss of his legal materials; (3) claims under the Declaratory Judgment Act; and (4) First Amendment access to the courts claims under Bivens. (ECF No. 12-1 at PageID 63–66.) The Court also construes the Consolidated Complaint to assert Fifth Amendment due process claims based on the deprivation of his legal materials.

Morris seeks unspecified damages and injunctive relief "such as an order enjoining the separation of legal documents from all persons (or at least Morris) traveling through JPATS." (ECF No. 2 at PageID 7.) He also requests a declaration "concerning the legality and seizure of his legal materials" and a declaration that "government officials may not intentionally or recklessly destroy a prisoner's irreplaceable legal materials in a manner that causes actual interference with the prisoner's pending state or federal, criminal or civil, litigation."[1] (ECF No. 12-1 at PageID 64.) Finally, Morris also seeks the costs of suit, attorneys' fees, and "any other appropriate relief." (ECF No. 2 at PageID 7.)

## APPLICABLE LAW

A civil action against a governmental entity, officer, or employee brought by a prisoner is subject to screening by the court. 28 U.S.C. § 1915A(a). During the screening process, a court identifies and dismisses those portions of a complaint that fail to state a claim or seek monetary relief against an immune party. Id. at § 1915A(b).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the familiar Twombly-Iqbal pleading standard. See Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). A complaint's "well-pleaded" factual allegations are accepted as true and must "plausibly suggest an entitlement to relief." Williams v. Curtin, 631 F.3d 380, 383 (6th

[1] Morris alleges that the loss of his legal documents affected several cases he was involved in. See Morris v. King, No. 20-cv-4101 (W.D. Ark.) (Morris alleges that five claims survived summary judgment but because of the lost documents, he "was forced to settle at a deep discount of $5,000." (ECF No. 2 at PageID 6.)); United States v. Morris, No. 18-cr-60014 (W.D. Ark.); United States v. Morris, No. 6:18-cr-60014-SOH-1 (W.D. Ark. at ECF No. 119) (Morris's § 2255 motion was denied on April 17, 2025); Morris v. IRS Commissioner, No. 15350-21 (Tax Court) (still pending); IRS Whistleblower Act Claim #2019-006634; IRS Offer in Compromise Case OIC #1001679595.

Cir. 2011) (citation omitted). Conclusory allegations are rejected and legal conclusions "must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679.

Pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers, and should . . . be liberally construed." Williams, 631 F.3d at 383 (citation omitted). But pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

## ANALYSIS

### A. Bivens Claims Against USMS, JPATS, and CoreCivic

Individuals can bring an action against a federal employee who, acting under color of federal law, violates that individual's Constitutional rights. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971). Morris has brought claims against JPATS and the USMS related to the alleged denial of his right to access the courts because of the deprivation of his legal property. (ECF No. 2 at PageID 2.) As stated above, JPATS is the transportation division of the USMS. However, a Bivens suit may only be brought against individual officers. See Haines v. Fed. Motor Carrier Safety Admin., 814 F.3d 417, 431 (6th Cir. 2016). That is because "sovereign immunity shields the Federal Government and its agencies from suit" under Bivens. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) (noting that a prisoner "may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP"). Therefore, Morris cannot maintain his Bivens claims against JPATS and the USMS, so they are **DISMISSED WITH PREJUDICE**.

Morris also asserts Bivens claims against CoreCivic, the private company that operates the detention center in Tallahatchie County, Mississippi where he was held. Bivens is

unavailable in actions against private prison operators. See Malesko, 534 U.S. at 63. Therefore, Morris's Bivens claims against CoreCivic are **DISMISSED WITH PREJUDICE**.

**B. Bivens Claims Against JPATS Employee #1**

Morris has also brought claims against JPATS Employee #1 related to the alleged denial of his right to access the courts because of the deprivation of his legal property. "Under the Bivens line of cases, . . . a cause of action [exists] against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action." Koubriti v. Convertino, 593 F.3d 459, 466 (6th Cir. 2010). A Bivens claim is appropriate in the following contexts: (a) a Fourth Amendment claim in the search and seizure context; (b) a Fifth Amendment claim under the Due Process Clause for gender discrimination by a federal employer; and (c) an Eighth Amendment claim for a prison official's deliberate indifference to a federal inmate's medical needs. Ziglar v. Abbasi, 582 U.S. 120, 131 (2017); see Egbert v. Boule, 596 U.S. 482, 490–91 (2022). Morris's claim against JPATS Employee #1 does not arise in any of those contexts.

"[R]ecognizing a cause of action under Bivens is 'a disfavored judicial activity.'" Egbert, 596 U.S. at 491. A two-step test applies to determine whether a *Bivens* claim may proceed. Goldey v. Fields, 606 U.S. 942 (2025) (per curiam). First, the court asks whether the case presents "a new Bivens context"—that is, whether the case "is different in a meaningful way" from the cases in which this Court has recognized a Bivens remedy. Ziglar, 582 U.S. at 139. If so, the court then asks whether there are "special factors" indicating that "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Goldey, 606 U.S. at 944 (quoting Egbert, 596 U.S. at 492).

Morris's claims implicate his First Amendment right to access the courts and his Fifth Amendment right to due process. However, the Supreme Court has declined to extend Bivens to First Amendment claims. See Egbert, 596 U.S. at 499 (noting that "[e]xtending Bivens to alleged First Amendment violations would pose an acute risk of increasing" substantial social costs); Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Therefore, Morris's First Amendment claim under Bivens fails.

A Bivens' claim may be brought to redress a violation of equal protection under the Fifth Amendment, but only in the context of a claim for wrongful termination from federal employment based on general discrimination. See Davis, 442 U.S. at 234. Courts within the Sixth Circuit have consistently declined to extend Bivens to other contexts arising under the Fifth Amendment. See, e.g., Harris v. FBOP, No. 19-3585, 2020 WL 7586968, at *1–2 (6th Cir. Sep. 22, 2020) (affirming district court's decision to not extend Bivens to federal inmate's claim that BOP officials violated his Fifth Amendment due process rights by failing to assist him in obtaining a marriage license); Bryant v. Stephens, No. 4:26-cv-589, 2026 WL 1943027, at *3 (N.D. Ohio July 6, 2026) (concluding that Bivens did not extend to federal detainee's Fifth Amendment due process claim based on detainee's assertion that "an improper appeal designation deprived him of a transcript and appointed counsel"); Mosley v. Brewer, No. 7:25-001-KKC, 2025 WL 241119, at *2 (E.D. Ky. Jan. 17, 2025) (noting that Bivens does not extend to due process claims based on confinement in a particular prison or prison transfers); Richard v. Healy, No. 4:24 CV 1420, 2024 WL 4711286, at *3 (N.D. Ohio Nov. 7, 2024) (declining to extend Bivens to a due process claim based on "banning family members from a prison visitation list").

In keeping with the Sixth Circuit courts facing similar decisions, the best course here is to not extend Bivens by permitting Morris's Fifth Amendment claims against JPATS Employee #1 to proceed. Therefore, Morris's Bivens claims against JPATS Employee #1 are **DISMISSED WITH PREJUDICE**.

**C. FTCA Claims**

Morris brings claims under the FTCA for the deprivation of his legal documents. The FTCA provides a cause of action against the United States for personal injury or death resulting from the negligence or wrongful act or omission of a federal government employee. 28 U.S.C. § 2679(b)(1). Specifically, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The FTCA does not create a new cause of action, but instead enables private liability in limited circumstances against a defendant, the United States, who is typically immune from suit. Chomic v. United States, 377 F.3d 607, 611 (6th Cir. 2004) (citing Feres v. United States, 340 U.S. 135 (1950)).

The FTCA is clear that it does not permit "claims arising in respect of . . . the detention of any . . . property by any . . . law enforcement officer." 28 U.S.C. § 2680(c). "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers." Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008). Indeed, the United States retains sovereign immunity against lost property claims, including claims brought by Morris. See Kosak v. United States, 465 U.S. 848, 854 (1984). Without a doubt, "FTCA actions alleging the detention or mishandling of personal property by prison officials are subject to dismissal." See Brown v. United States, No. 2:21-02821-SHM-

tmp, 2023 WL 11816591, at *3 (W.D. Tenn. Mar. 9, 2023) (collecting cases). Thus, Morris's FTCA claims based on the actions of JPATS/USMS are barred by sovereign immunity.

Morris suggests that "CoreCivic is equally responsible as [it] [is] the only other place the property can be." (ECF No. 2 at PageID 4.) But the FTCA's definition of "employee" specifically excludes "any contractor with the United States." 28 U.S.C. § 2671. Whether a person is an employee or independent contractor is governed by the "control test." C.H. ex rel. Shields v. United States, 818 F. App'x 481, 485 (6th Cir. 2020) (citing Logue v. United States, 412 U.S. 521 (1973)). Under the test, "the 'critical factor' in distinguishing a federal employee . . . from an independent contractor . . . is 'the authority of the principal to control the detailed physical performance of the contractor,' . . . that is, 'whether [the contractor's] day-to-day operations are supervised by the Federal Government.'" Id. (citations omitted). Several courts have concluded that CoreCivic employees are not United States government agents. See, e.g., Cleveland v. CoreCivic, No. 4:23CV0094, 2023 WL 3159743, at * 2 (N.D. Ohio Apr. 28, 2023) (dismissing federal inmate's FTCA claim against CoreCivic); Budhani v. Washburn, No. 4:22-cv-00151-CDL-MSH, 2022 WL 22898382, at *7 (M.D. Ga. Dec. 20, 2022) (concluding that CoreCivic employees operating a detention center that housed federal detainees were "precisely the type of independent contractors exempted from suit under the FTCA") (citation omitted).

Therefore, Morris fails to state a claim to relief under the FTCA based on actions taken by any CoreCivic employee.[2] For these reasons, Morris's FTCA claims are **DISMISSED WITH PREJUDICE**.

---

[2] To the extent Morris seeks to assert claims under 42 U.S.C. § 1983 against CoreCivic employees at the Tallahatchie County, Mississippi, detention facility, this Court is not the proper venue for such claims. Tallahatchie County is within the Oxford Division of the Northern District of Mississippi. See 28 U.S.C. § 104(a)(2).

**D. APA Claims**

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." Franklin v. Massachusetts, 505 U.S. 788, 796 (1992). Agencies are required to engage in "reasoned decision-making." Michigan v. E.P.A., 576 U.S. 743, 750 (2015). The APA allows "any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in a court.'" Webster v. Doe, 486 U.S. 592, 599 (1988) (citations omitted). Two conditions must be satisfied for an agency action to be "final" under the APA: "First, the action must mark the consummation of the agency's decision-making process," and "second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 597 (2016). The APA authorizes a reviewing court to:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity.

5 U.S.C. § 706(1)–(2). The APA is available only when "there is no other adequate remedy in a court." See 5 U.S.C. § 704. The only proper defendants in an APA action are "the United States, the agency by its official title, or the appropriate officer." Id. § 703.

Because CoreCivic is not a federal agency, any APA claims against CoreCivic are **DISMISSED WITH PREJUDICE**.

With respect to the APA claims against JPATS, the USMS, and the JPATS employee, Morris alleges that the seizure of his legal materials violated his First Amendment right to access the courts because the seized materials were vital to several pending proceedings. (ECF No. 12-

1 at PageID 63, 65.) However, he fails to provide detail regarding the legal materials that were seized. He does not indicate whether these documents could have been obtained elsewhere. And, particularly with respect to the documents from his civil rights action, he fails to describe with particularity how he was injured by the settlement. Additionally, Morris fails to indicate what "final agency action" he is challenging in his APA claims. See Chehazeh v. Att'y Gen., 666 F.3d 118, 126 n.1 (3d Cir. 2012) (noting that an APA action "must be dismissed" when a plaintiff fails to allege final agency action). For these reasons, Morris's APA claims are **DISMISSED WITHOUT PREJUDICE**.

**E. Declaratory Judgment Act**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. That act, however, does not create an independent cause of action. See Davis v. United States, 499 F.3d 590, 594 (6th Cir. 2007). "The Act only provides courts with discretion to fashion a remedy." Heydon v. MediaOne of Southeast Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003) (citation omitted). To the extent that Morris asserts a distinct cause of action under the Act, those claims are **DISMISSED WITH PREJUDICE**.

**F. AMENDMENT UNDER THE PLRA**

A prisoner may amend his complaint to avoid a sua sponte dismissal under the PLRA. Lucas v. Chalk, 785 F. App'x 288, 291 (6th Cir. 2019) (citation omitted). Leave to amend is not required where a deficiency cannot be cured. Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that . . . amending the complaint would be futile, then a sua sponte dismissal may stand.").

The defects in Morris's Bivens and FTCA claims cannot be cured by amendment. Likewise, any APA claims against CoreCivic, as well as any claims asserting distinct causes of action under the Declaratory Judgment Act, cannot be cured by amendment. Therefore, leave to amend those claims is **DENIED**. Leave to amend the APA claims against JPATS, the USMS, and the JPATS employee is **GRANTED**.

## CONCLUSION

For the reasons set forth above:

A. The following claims from the Consolidated Complaint are **DISMISSED WITH PREJUDICE**: (1) the Bivens claims; (2) the FTCA claims; (3) any APA claims against CoreCivic; and (4) any claims asserting distinct causes of action under the Declaratory Judgment Act. Leave to amend those claims is **DENIED**.

B. Morris's APA claims against JPATS, the USMS, and the JPATS employee are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

C. Morris is **GRANTED** leave to amend his APA claims JPATS, the USMS, and the JPATS employee. Amended claims must be filed within twenty-one (21) days of the date of this Order. An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of his claims. An amended complaint supersedes the original Consolidated Complaint and must be complete without reference to the prior pleadings. Morris must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original Consolidated Complaint. Each claim for relief

must be stated in a separate count and must identify each Defendant sued on that count. If Morris fails to comply with Rule 8 and the Court's instructions for pleading amended claims, the Court will dismiss improperly pled amended claims with prejudice.

D. If Morris fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice and enter judgment. The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g). See Simons v. Washington, 996 F.3d 350, 353 (6th Cir. 2021).

E. If Morris is transferred to a different prison or released, he is **ORDERED** to notify the Court immediately, in writing, of his change of address. If Morris fails to abide by these or any other requirements of this Order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without any additional notice or hearing by the Court.

F. Finally, The Clerk is **DIRECTED** to modify the docket to add the United States as a Defendant in this matter.

**IT IS SO ORDERED**, this 14th day of October, 2026.

s/Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE